# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANNIE LEE LAFLEUR** | **CIVIL ACTION NO. 6:15-cv-1978** |
|     **LA. DOC #600564** | |
| **VS.** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **BURL CAIN, WARDEN** | **MAGISTRATE JUDGE HANNA** |

## <u>REPORT AND RECOMMENDATION</u>

*Pro se* petitioner Dannie Lee Lafleur, an inmate in the custody of the Louisiana Department of Corrections, filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on June 30, 2015.  Petitioner attacks his 2012 conviction for first degree murder for which he was sentenced to life imprisonment by the Thirteenth Judicial District Court for Evangeline Parish, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

For the following reasons, **IT IS RECOMMENDED** that the instant petition for *habeas corpus* be summarily **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

## Statement of the Case

Petitioner was charged in a single grand jury indictment by the Evangeline Parish Grand Jury with the first degree murder of Tuc Thanh Do and the armed robbery of Thao Thi Thanh Le.  The charges stemmed from the May 6, 2011 armed robbery of the Tat Nail Salon in Evangeline Parish, owned by Tuc Thanh Do and his wife, Thao Thi Thanh Le.  During the commission of the armed robbery, Tuc Thanh Do was shot and killed.  The charges were tried together in the same proceeding.  *See State v. LaFleur,* 114 So.3d 666, 667 (La. App. 3rd Cir. 2013).

The transcript of petitioner's post-conviction hearing reveals that prior to his May 12, 2011 arraignment, Alex Chapman ("Chapman") was appointed to represent petitioner.  Thereafter, the State elected to seek the death penalty.  Because he was not certified to handle a death penalty case, Chapman contacted the Capitol Defense Project to obtain two certified capitol defense counsel to represent petitioner.  Mr. Price and another attorney were assigned the case.  Both attorneys were present for a hearing held thereafter. [rec. doc. 1-2, pg. 31-33].

In the interim, however, petitioner had retained Elbert Guillory ("Guillory") to represent him.  Accordingly, both capitol counsel and Chapman, all of whom were indigent defenders, were relieved of their duties. [*Id.*]

2

At some later date, the State offered to withdraw the death penalty if petitioner would plead guilty to first degree murder.  Petitioner rejected the offer and fired Guillory.  Accordingly, that same date, February 16, 2012, Chapman was re-appointed.  [*Id*., *Id*. at pg. 36-37, 41].

Before Chapman could contact the Capitol Defense Project attorneys (Mr. Price and the other attorney) to re-enter the case, Chapman was advised by the State that the death penalty would not be sought.  Chapman therefore advised the Capitol Defense Project attorneys that he would handle the case; they likewise advised that they could not assist since it was no longer a death penalty case.  [*Id*.; *Id*. at 43].  At the next opportunity, Chapman advised petitioner that the State withdrew the death penalty; from the beginning of the prosecution Chapman had also advised petitioner that he didn't think this was a death penalty case. [*Id*. at 41-42].  The death penalty was not waived on the record, however, until the first day of trial, June 18, 2012. [*Id*. at 47, 51, 54].

While Guillory had the case, Chapman continued to follow it; Chapman had also been provided the discovery even though he was not officially assigned the case. [*Id*. at 33, 41].

Petitioner's jury trial began on June 18, 2012, after which petitioner was found guilty on both counts, first degree murder and armed robbery.  He was

3

sentenced to serve consecutive sentences of life without benefit of parole and twenty five years.

Appellate counsel, Edward Bauman ("Bauman"), was appointed and through him petitioner directly appealed to the Louisiana Third Circuit Court of Appeal. The sole assignment of error asserted was that petitioner's "convictions and sentences constitute double jeopardy." [rec. doc. 1-2, p. 4, *State of Louisiana v. Dannie Lee Lafleur*, 2012-1383, 114 So.3d 666 (La. App. 3 Cir. 6/5/2013)]. On June 5, 2013, the Third Circuit found that petitioner's convictions did violate the prohibition against double jeopardy and accordingly, vacated petitioner's conviction and sentence for armed robbery.  [*Id*., *State of Louisiana v. Dannie Lee Lafleur*, 2012-1383, 114 So.3d 666 (La. App. 3 Cir. 6/5/2013)].  In a footnote at the end of the Third Circuit's opinion, the Court cryptically stated "[t]he defendant has not appealed his conviction and sentence for first degree murder; therefore, we do not address them." [*Id*., rec. doc. 1-2, at pg. 9].  Neither petitioner nor the State sought further review in the Louisiana Supreme Court.

The record reveals Bauman's reasoning for raising only a double jeopardy claim in the Third Circuit.  In a letter to petitioner dated June 18, 2013,  Bauman explained that he only raised those issues he felt might entitle petitioner to relief. He did not address sufficiency of the evidence regarding the murder conviction "as

there was nothing to refute the testimony of petitioner's friend and girlfriend.  Had

there been mention in the record of the possible relationship between the two, [he]

could have shown why there [sic] testimony was biased. [However, a]s there [sic]

testimony implicated both of them, it made [their testimony] credible in the eyes of

the jury. . . . Any other errors [Bauman] found were minor and would be

considered harmless error by the Third Circuit."  Bauman additionally advised that

petitioner could consider raising ineffective assistance of counsel claims by post-

conviction application if petitioner told his attorney about the alleged relationship

between his friend and girlfriend and counsel did not use the information at trial.

[rec. doc. 9-1, pg. 3].  In a follow-up letter dated July 1, 2013, Bauman explained

that the new information (presumably about a relationship between petitioner's

friend and girlfriend) could be explored in post-conviction proceedings where "a

full evidentiary hearing can be had." [rec. doc. 9-1, pg. 4].

On June 20, 2013,  petitioner filed an application for post-conviction relief

in the Thirteenth Judicial District Court seeking an out-of-time appeal with respect

to his first degree murder conviction. [rec. doc. 9-1, pg. 7-1, 16-20].  An

evidentiary hearing was held on September 19, 2013. [rec. doc. 9-1, pg. 25]. At

that time, petitioner was granted permission to orally amend his post conviction

application to add ineffective assistance of trial and appellate counsel claims. [rec.

doc. 1-2, pg. 21, 29].  With respect to ineffective assistance of counsel, petitioner argued that trial counsel Chapman was ineffective for failing to file a Motion to quash his indictment based on double jeopardy, because Chapman failed to refer the case back to the Capitol Defense Team after Guillory withdrew, and that Chapman failed to hire a DNA expert.  With respect to appellate counsel Bauman, petitioner argued that Bauman was ineffective for failing to challenge petitioner's murder conviction on grounds of sufficiency of the evidence and for failing to raise ineffective assistance of counsel claims. [rec. doc. 1-2, pg. 47, 49-52].

At the conclusion of the hearing, petitioner's application for post-conviction relief was denied. With respect to petitioner's out of time appeal, the Court found as follows:

> This is not your normal situation.  What I normally get, Mr. LaFleur, is someone is convicted.  For some reason, the delays to appeal run, and they never get their appeal in on time.  Then they come to me and say, "Hey, something happened. It got lost in the mail. My lawyer is in the hospital. . . . Something happened, and we didn't get an appeal. I want an extended time to appeal."  That's the normal case.  You're not a normal case.  You're not a normal case because you did appeal. It was appealed.  You didn't like the way it was appealed.  You don't like the results, and I understand that.  But you had a lawyer.  That lawyer made a decision.  That lawyer appealed what that lawyer thought was the appealable issue, and the Third Circuit ruled on it. Now, you want another appeal.  The Code Article that you're talking about [La.C.Cr.P. art. 930.3(3)] does not give you a right to another appeal just because there was double jeopardy.  It gives you a right to ask for post-conviction. . . to give you a chance for things that you

haven't heard.  For example, ineffective assistance of counsel like you just talked about with . . .your complaints about the way Mr. Chapman handled the case.  But I don't believe that it gives you a right to a second appeal.  You've already had one.  I'm denying your right to a second appeal.  You've already had one.  Now you want another one.  I'm denying your right to another appeal. [rec. doc. 1-2, pg. 28-29].

    With respect to ineffective assistance of counsel, the Court found as

follows:

    Number one, Mr. Chapman testified that he got the file from Mr. Guillory.  The minutes . . . say on February 16th that Mr. Guillory was allowed to withdraw from the record.  Mr. Chapman was going to be the liason between the Capitol Defense team and you.  He was still on the case. . . He testified he notified them.  And that it was not a death penalty, so they would not take the case.  He knew about it, and you knew about it before you came to trial. . . . When you went to trial, you knew it was not a death penalty case.  That takes that argument and throws it out the window.  The second thing is he did hire an expert.  He decided it was not necessary to call her at the trial.  That's a decision made in trial tactics.  You can't second guess that. . . . There's nothing I heard today other than you being dissatisfied with the outcome of this case that would indicate you had ineffective assistance of counsel.  The Capitol Defense Team was not going to take your case.  You wanted your own lawyer.  You hired him.  Mr. Chapman took you to trial.  It didn't work out. . . There's nothing here that shows me that you're entitled to post-conviction relief. . . .

[*Id*. at pg. 54-55].

    Petitioner's request for writs in the Third Circuit Court of Appeal was

denied on May 22, 2014. The Third Circuit found that petitioner "failed to meet

his burden of proving he was entitled to the relief sought" citing Louisiana Code

of Criminal Procedure article 930.2. [rec. doc. 9-1, pg. 33, *State v. LaFleur*, KH-13-1262 (La. App. 3rd Cir. 5/22/2014).  Petitioner's request for writs in the Louisiana Supreme Court was denied without comment on March 27, 2015. [rec. doc. 9-1, pg. 47, *State of Louisiana ex rel. Dannie Lee Lafleur vs. State of Louisiana*, 2014-1263, 162 So.3d 379 (La. 3/27/2015)].

Petitioner filed the instant petition on June 30, 2015.  He asserts the following claims for relief: (1) denial of due process because his request for an out-of-time appeal was denied; and (2) ineffective assistance of trial counsel because counsel failed to file discovery motions and motions to suppress, failed to subpoena any expert witness or any "viable witness" to testify on his behalf, and because counsel was not qualified to handle his death penalty case given that the case did not become a non-death penalty case until the morning of trial; (3) ineffective assistance of appellate counsel for failing to raise any claims challenging petitioner's first degree murder conviction.

## Law and Analysis

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make

an order for its summary dismissal and cause the petitioner to be notified." *See also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) *citing* Rule 4, Advisory Committee Notes ("The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'").

Based upon the court's review of the pleadings and exhibits attached thereto, petitioner is not entitled to relief on any of the claims asserted therein. Accordingly, this petition must be dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

**Standard of Review**

This *habeas* petition was filed on June 30, 2015; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[1]

---

[1]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[2] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this Court must

_____

[2]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.

give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ."  *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v.*

11

*Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523;

*Montoya,* 226 F.3d at 403-04 *citing  Williams*, 120 S.Ct. at 1523.  "The 'contrary

to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme

Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,*

230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

 Under the "unreasonable application" clause, a federal *habeas* court may

grant the writ only if the state court "identifies the correct governing legal

principle from . . . [the Supreme Court's] decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing*

*Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness.

*Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas*

court may not issue the writ "simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. . . [r]ather, that application must

also be unreasonable." *Williams,* 120 S.Ct. at 1522.

 Section 2254(d)(2) speaks to factual determinations made by the state

courts.  *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such

determinations to be correct; however, the petitioner can rebut this presumption by

clear and convincing evidence.  *Id.*  Thus, this Court must defer to the state court's

decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir. 2000).

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

## I.  Denial of a Second Appeal

Petitioner argues that he was denied due process when the Louisiana state courts denied his request for a separate and second out-of-time appeal of his first degree murder conviction after appellate counsel chose to present only a claim that petitioner's convictions and sentences constituted double jeopardy.

In denying this claim for relief, the state trial court held that petitioner

already had an appeal and that he was not entitled to a second appeal.  The court

further held that counsel had been appointed to prosecute petitioner's appeal and

counsel presented the issue which he believed was meritorious and the Third

Circuit ruled on that issue.  Further, the court held that the Louisiana Code of

Criminal Procedure article relied on by petitioner (article 930.3(3)) did not give

petitioner a right to a second appeal because the appellate court found a double

jeopardy violation.  Rather, the article permits the filing of a post-conviction

application to address claims, such as a double jeopardy or ineffective assistance

of counsel claim, that were unable to be brought on appeal. [rec. doc. 1-2, pg. 28-

29].

Under the appropriate standard of review, this Court cannot find that the

state court's decision was contrary to, or an unreasonable application of, federal

law, nor that the state court's factual determinations were unreasonable in light of

the State court record.  Accordingly, the decision can not be disturbed.

In this case petitioner was tried, convicted and sentenced in a single

criminal proceeding for which a single judgment of conviction was entered on

multiple counts that included a sentence on each count.  While the Court

acknowledges the Third Circuit's cryptic footnote in the opinion issued by the

Third Circuit on direct appeal, this Court has found nothing which supports a

14

finding that Louisiana law provides for a second direct appeal of the same judgment of conviction.  Rather, Louisiana law provides a criminal defendant with a right to a direct appeal from a final judgment entered in a criminal case.  *See* La. C.Cr. P. arts 912(C)(1) and 912.1(B)(1).  Petitioner exercised that right, when, through counsel, petitioner directly appealed his judgment of conviction to the Louisiana Third Circuit Court of Appeal asserting a double jeopardy claim.

Furthermore, to the extent that petitioner complains that the Louisiana state courts improperly applied Louisiana state law, that claim is not cognizable in this federal *habeas corpus* proceeding.  Federal courts "do not sit as a super state supreme court . . . ."  *Taylor v. Cain*, 2010 WL 6620876, *12 (W.D. La. 2010) *citing Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine if the state courts properly applied state law. *Id. citing Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and *Narvaiz v. Johnson*, 134 F.3d 688 (5th Cir. 1998).  Rather, "[f]ederal *habeas corpus* review is limited to errors of constitutional dimension . . . ." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998);  *Estelle,* 502 U.S. at 68, 112 S.Ct. at 480 ("A federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States"); 28 U.S.C. §2254(a). Moreover, the Fifth Circuit has repeatedly held that defects in a state *habeas*

proceeding are not cognizable under 28 U.S.C. § 2254.  *Taylor*, 2010 WL 6620876

at *12  (and cases cited therein including  *Moore v. Dretke*, 369 F.3d 844, 846 (5th

Cir. 2004), *Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir.), *cert. denied*, 534

U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), *Trevino v. Johnson*, 168 F.3d

173, 180 (5th Cir. 1999); *Kidd v. Keith*, 2014 WL 463056, *5 (W.D. La. 2014)

(citations omitted).

Furthermore, it is axiomatic that a criminal defendant has a Constitutional

right to a "first appeal, granted as a matter of right" from a criminal judgment of

conviction with the benefit of counsel.[3]  *See Douglas v. People of State of*

*California,* 372 U.S. 353, 356-357, 83 S.Ct. 814 (1963);  *Griffin v. Illinois*, 351

U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956).  There is, however, no

decision of the United States Supreme Court which suggests, much less mandates,

that a criminal defendant has a Constitutional right to a second appeal of the same

judgment of conviction.

To the contrary, complaints about the adequacy of appellate counsel's

representation on direct appeal are resolved under the standard set forth in

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

_____

[3]While there is no *per se* Constitutional right to an appeal, such a Constitutional right is
recognized in states such as Louisiana which provide appellate review for those who can pay for an
appeal applicable to those who are indigent.  *See Jones,* 463 U.S. at 751 *citing Griffin* and *Douglas,*
*supra.*

*See Smith v. Robbins*, 528 U.S. 259, 285 and 287-288, 120 S.Ct. 746, 764 and 288 (2000) *citing Smith v. Murray*, 477 U.S. 527, 535–536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) and *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992).  Indeed, the process of "winnowing out weaker arguments on appeal and focusing on one central issue" or those more likely to prevail is the hallmark of effective appellate advocacy. *Jones*, 463 U.S. at 751-752, 103 S.Ct. at 3313.

In sum, while petitioner complains that counsel did not raise a sufficiency of the evidence claim directed at his first degree murder conviction, or a claim of ineffective assistance of counsel in that direct appeal, that alleged deficiency does not Constitutionally mandate a second appeal.   Rather, such complaints are addressed in the context of an ineffective assistance of appellate counsel claim. Petitioner has asserted such a claim and the Court addresses that claim below. For these reasons, federal *habeas corpus* relief is not warranted with respect to this claim.

## II.  Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's

deficient performance, the outcome of the proceedings would have been different.
*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674
(1984).

The burden is on the petitioner to show that counsel's representation fell
below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of
counsel's performance must be "highly deferential," and the court must make
every effort "to eliminate the distorting effects of hindsight, to reconstruct the
circumstances of counsel's alleged conduct, and to evaluate the conduct from
counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the defendant must overcome the presumption that,
under the circumstances, the challenged action might be considered sound trial
strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es]
that counsel has exercised reasonable professional judgment."  *United States v.
Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d
1275, 1279 (5th  Cir. 1986).

Courts may "not find ineffective assistance of counsel merely because [the
court] disagree[s] with counsel's trial strategy." *Crane v. Johnson*, 178 F.3d 309,
312 (5th Cir. 1999) *citing Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

Rather, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke,* 404 F.3d 878, 885 (5th Cir. 2005); *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane*, 178 F.3d at 314.

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[4] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.

A petitioner must affirmatively prove prejudice. *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d

---

[4]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

1062,1066 (5th Cir. 1998).  Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland*'s prejudice element."  *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green,* 160 F.3d at 1043.

Petitioner claims that he received ineffective assistance of trial counsel because counsel failed to file discovery motions and motions to suppress, failed to subpoena any expert witness or any "viable witness" to testify on his behalf, and because counsel was not qualified to handle his death penalty case given that the

20

case did not become a non-death penalty case until the morning of trial.

The state trial court rejected each of these claims on the merits at the conclusion of the September 19, 2013 evidentiary hearing. Petitioner has not shown that the decision rejecting his claims was contrary to, or an unreasonable application of, federal law, or that the state court's factual determinations were unreasonable in light of the State court record.  Accordingly, federal *habeas corpus* relief can not be granted.

With respect to petitioner's expert witness claim, the trial court expressly found that petitioner's counsel did hire an expert, but decided, as a matter of trial tactics, not to call her at trial.  This finding comports with counsel's testimony that he did hire a DNA expert who performed an analysis and submitted a report. Counsel testified that he used this report and information received from the expert to attack the State's DNA expert on cross-examination and point out weaknesses in the Sate's case. [rec. doc. 1-2, pg. 34 and 42].   Under the circumstances, petitioner has not overcome the presumption that counsel's decision may be considered sound trial strategy", nor has he shown that counsel's  "conscious and informed decision" not to call his expert, but instead use the information derived from the defense expert to cross-examine the State's expert witness "so ill chosen that it permeates the entire trial with obvious unfairness."  As such, federal *habeas* relief

is nor warranted.   *Strickland,* 466 U.S. at 689; *Martinez,* 404 F.3d at 885; *Cavitt*, 550 F.3d at 440 *quoting Crane*, 178 F.3d at 314.

The state court expressly denied petitioner's claim regarding his counsel's qualifications to represent petitioner at trial crediting counsel's testimony and rejecting petitioner's testimony as not credible.   The court found that although the State's request for the death penalty was not withdrawn on the record until the morning of trial, both petitioner and his counsel, Chapman, knew the case was no longer a death penalty case months before trial in February, 2012, when Guillory withdrew and Chapman was re-appointed, and for that reason, after being notified by Chapman of Guillory's withdrawal, the Capitol Defense team declined to re-enter the case.   Again these findings are fully supported by the record before this Court. [*See* rec. doc. 1-2, pg. 36-37, 41-43].  Indeed, from the beginning of the prosecution Chapman testified that he had advised petitioner that he didn't think it was a death penalty case. [*Id*. at 41-42].

The record further supports counsel's qualifications to handle a first degree non-death penalty murder case.  Chapman testified that he had been a practicing attorney for over thirty-five years, and in that time had tried seven or eight murder cases. [*Id*. at pg. 40].  Finally, as found by the trial court, Chapman got the file from Guillory upon re-appointment, and Chapman testified that even while

Guillory had the case, he nevertheless continued to follow it and had been provided the discovery. [*Id*. at 33, 41].  Thus, Chapman testified that he had adequate time to prepare the case for trial after the case was re-assigned to him. More specifically, Chapman testified that he had his expert's DNA analysis which helped him point out weaknesses in the State's case, he knew of issues regarding the evidence gathered by the police, and because he had the witnesses statements, he essentially knew what they would say and was aware of areas where their credibility could be questioned on cross-examination. [*Id.* at 42].  In sum, petitioner has not shown that counsel's performance was in any way deficient nor has he affirmatively proven prejudice.  *Strickland, supra.; Deville*, 21 F.3d at 659; *Mangum*, 67 F.3d at 84; *Earhart*, 132 F.3d at 1066.

Petitioner additionally faults counsel for failing to file discovery motions or a  motion to suppress.  Petitioner has shown no prejudice as a result of these alleged errors.  As noted above, Chapman had petitioner's entire file and he had been provided all of the discovery, including the witnesses statements. [*See Id.* at 33 and 41-42].  Furthermore. Chapman testified that he did not see any grounds for suppressing evidence based on the Fourth Amendment, and although petitioner had given a statement, it did not "hurt" petitioner and was not used at trial.  Thus, there were no grounds for a Motion to Suppress. [*Id*. at 34].   Failure to file a

futile motion does not cause counsel's performance to fall below an objective level of reasonableness. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037; *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Further, petitioner's self serving conclusory statements that the outcome of the case would have been different had such motion been filed "fall far short of satisfying *Strickland's* prejudice element" and "a mere possibility of a different outcome are insufficient" to warrant federal *habeas* relief. *Sayre*, 238 F.3d at 635; *Lamb*, 179 F.3d at 359.

To the extent that counsel faults Chapman for failing to file a Motion to Dismiss based on double jeopardy grounds, petitioner has shown no prejudice. The issue was presented on appeal and petitioner's armed robbery conviction was vacated. Petitioner would not have received any different relief had trial counsel presented the issue.

Finally, to the extent that petitioner faults Chapman for failing to present any "viable witness" to testify on his behalf, that claim is without merit. Complaints of uncalled witnesses are not favored in federal *habeas corpus* review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of the content of a prospective witness' testimony are largely

speculative. *Gregory v. Thaler*, 601 F.3d 347, 352-353 (5th Cir. 2010) *citing*

*Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) and *Alexander v.*

*McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Bernard,* 762 F.3d at 473; *Sayre v.*

*Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) *citing Lockhart v. McCotter,* 782

F.2d 1275, 1282 (5th Cir. 1986), *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th

Cir. 1985),  *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984), *United States v.*

*Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983), and *Buckelew v. United States*, 575

F.2d 515, 521 (5th Cir. 1978); *Evans v. Cockrell*, 285 F.3d 370, 377(5th Cir. 2002).

"[W]ithout a specific, affirmative showing of what the missing evidence or

testimony would have been, a habeas court cannot even begin to apply *Strickland*'s

standards because it is very difficult to assess whether counsel's performance was

deficient, and nearly impossible to determine whether the petitioner was

prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18

F.3d 1208, 1221 (5th Cir. 1994).

Moreover, where the only evidence of a missing witness's testimony is from

the defendant, courts view such claims with great caution.  *Sayre,* 238 F.3d at 636

*citing Lockhart,* 782 F.2d at 1282, *Marler,* 777 F.2d at 1010,  *Murray,* 736 F.2d at

282, *Cockrell,* 720 F.2d at 1427, and *Buckelew* , 575 F.2d at 521.  Thus, "[a]

prisoner's bald conclusory assertion that [favorable] witnesses were not called

does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Sayre,* 238 F.3d at 636 citing *Marler,* 777 F.2d at 1010.  Moreover, to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness' testimony would have been favorable, but also that the witness was available and willing to testify at trial. *Alexander*, 775 F.2d at 602; *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

Here, petitioner fails to meet this standard.  He does not show what the unidentified witnesses' testimony would have been, and petitioner's mere speculation is insufficient to justify *habeas corpus* relief.  Moreover, petitioner fails to demonstrate that the testimony of these unidentified witnesses would have been favorable to the defense or that any of these unidentified witnesses was available and willing to testify at trial.  *Habeas* relief is therefore not warranted.

### III.  Ineffective Assistance of Appellate Counsel

Ineffective assistance of appellate counsel claims are governed by the test set forth in *Strickland v. Washington*.  *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006). Therefore, petitioner must demonstrate that his appellate counsel's performance was deficient and that he was prejudiced by the deficient performance because the outcome of his appeal would have been different. *Id*. at 410–11.  "Counsel need not raise every nonfrivolous ground of appeal, but should

instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008) (citation and internal quotation marks omitted).  Thus, appellate counsel is not ineffective for failing to present frivolous arguments on appeal. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994);  *United States v. Garcia*, 348 Fed. Appx. 65, 66 (5th Cir. 2009) *citing United States v. Kimler*, 167 F.3d 889, 893 (5th  Cir. 1999) (failure to raise legally meritless argument cannot support an ineffectiveness claim).

Petitioner apparently faults counsel for failing to raise any claims challenging his first degree murder conviction.  Petitioner does not argue that any particular claim should have been raised on appeal, much less that any such claim would have been meritorious.  Indeed, the record discloses the opposite. Chapman testified at the post-conviction hearing that before turning the record over to the Louisiana Appellate Project, he reviewed the record for any "winnable" issues and found none. [rec. doc. 1-2, pg. 39].  Likewise, in his June 18, 2013 letter to petitioner,  Appellate counsel Bauman opined, other than the double jeopardy claim, "[a]ny other errors which [he] found were minor and would be considered harmless error by the Third Circuit." [rec. doc. 9-1, pg. 3].  For this reason alone, relief is not warranted as petitioner has not satisfied his burden.

Nevertheless, assuming that petitioner contends, as he did in the Louisiana

state courts, that appellate counsel was ineffective for failing to raise a sufficiency

of the evidence claim with respect to his murder conviction or claims of

ineffective assistance of trial counsel on appeal, the record likewise refutes those

claims.

　　　With respect to sufficiency of the evidence, it is clear that there was no

evidence of any alleged relationship between petitioner's friend and girlfriend

contained in the record, to show bias or to challenge their credibility.  Sufficiency

of the evidence review is limited to "record evidence." *Grace v. Warden Louisiana*

*State Penitentiary*, 2015 WL 5016495, *10 (W.D. La. 2015) *citing Herrera v.*

*Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861 (1993) *citing Jackson v. Virginia*,

443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979).  Such review

"does not extend to nonrecord evidence, including newly discovered evidence."

*Id.*  Thus, as noted by Bauman in his letters to petitioner, because there was no

mention in the record of any possible relationship between the two, there was no

basis for a sufficiency of the evidence challenge.  Bauman could not demonstrate

bias or point to any credibility issue.   Thus,  petitioner has not demonstrated that

appellate counsel was deficient or that he was prejudiced by appellate counsel's

performance because he has not shown that the outcome of his appeal would have

been different had a sufficiency of the evidence claim been presented.  *Amador*,

458 F.3d at 410–11.

With respect to ineffective assistance of trial counsel claims allegedly not raised on direct appeal, petitioner has likewise failed to show prejudice. The general rule in Louisiana is that a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This creates the opportunity for a full evidentiary hearing to develop the merits of the allegations on the record if needed.  *Harris v. Warden David Wade Correctional Center*, 2011 WL 5866222, *16 (W.D. La. 2011) *citing State v. Ellis*, 966 So.2d 139, 150 (La. App. 2d Cir. 2007) *citing State ex rel. Bailey v. City of West Monroe*, 418 So.2d 570 (La. 1982);   *See also See also Massaro v. United States*, 538 U.S. 500, 504–05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) ( the preferred method for raising a claim of ineffective assistance of counsel is by post-conviction motion), *United States v. Gulley*, 526 F.3d 809, 821 (5th  Cir. 2008) (stating the same general rule applicable in federal proceedings).

In this case, the ineffective assistance of counsel claims raised by petitioner were denied after an evidentiary hearing was held.  Thus, nothing suggests that appellate counsel should have departed from the general rule by raising these claims on direct appeal; to the contrary, these claims were simply not sufficiently developed to allow resolution by the record alone.  Deficient performance has

therefore not been demonstrated.  Further, for the reasons set forth above, the claims lack merit.  A finding of prejudice, had the claims been raised on appeal, is therefore precluded.  Appellate counsel is not ineffective for failing to present frivolous arguments on appeal. *See Williams*, 16 F.3d at 635; *Garcia*, 348 Fed. Appx. at 66  *citing. Kimler*, 167 F.3d at 893.

**IT IS RECOMMENDED** that the instant petition for *habeas corpus* be summarily **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except

upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana this 22nd day of December, 2015.

_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**

COPY SENT:

DATE: __12/22/2015__
BY: _____EFA_____
TO: _____RFD_____
31                          cg